David M. SOCKO, Appellee

v.

**MID–ATLANTIC SYSTEMS OF CPA, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 26, 2014.

Filed May 13, 2014.

Reargument Denied July 8, 2014.

Michael J. Torchia, Huntingdon Valley, for appellant.

BEFORE: GANTMAN, P.J., DONOHUE and STABILE, JJ.

OPINION BY DONOHUE, J.:

Appellant, Mid–Atlantic Systems of CPA, Inc. ("Mid–Atlantic"), appeals from the trial court's order granting the motion for partial summary judgment filed by Appellee, David M. Socko ("Socko"). This appeal presents an issue of first impression in this Commonwealth, namely whether a noncompetition restrictive covenant in an employment agreement entered into after the commencement of employment is unenforceable for lack of consideration, where the employer provided the employee with no benefit or change in job status at the time of execution, but the agreement states that the parties "intend to be legally bound" by its terms. For the reasons that follow, we conclude that the restrictive covenant is unenforceable for lack of valuable consideration, and therefore affirm the trial court's order.

The parties do not dispute the relevant factual background. Mid–Atlantic, which is in the business of basement waterproofing services, originally hired Socko as a salesman in March 2007, at which time he signed an employment contract containing a two-year covenant not to compete. Socko resigned in February 2009, but was rehired in June 2009, at which time he signed a new employment agreement containing another two-year covenant not to compete. While still employed by Mid–Atlantic as an at-will employee, on December 28, 2010, Socko signed a third employment contract (hereinafter, "the Non–Competition Agreement")[1] containing a covenant not to compete with Mid–Atlantic for two years after the termination of his employment in any of the following locations: Connecticut, the District of Columbia, Delaware, Maryland, New Jersey, Pennsylvania, New York, Virginia, West Virginia, or any other jurisdiction in which Mid–Atlantic does business. The Non–Competition Agreement expressly provides for the application of Pennsylvania law.

On January 16, 2012, Socko resigned from Mid–Atlantic, and a few weeks later he accepted a position with Pennsylvania Basement Waterproofing, Inc. in Camp Hill, Pennsylvania. On February 7, 2012, Mid–Atlantic sent a letter to Socko's new employer, attaching the Non–Competition Agreement and threatening litigation. Ten days later, Pennsylvania Basement Waterproofing, Inc. terminated Socko's employment.

On April 13, 2012, Socko filed a Complaint and Action for Declaratory Judgment against Mid–Atlantic, seeking, *inter alia*,[2] a determination that the Non–Competition Agreement is unenforceable because it was not supported by sufficient consideration. After discovery, on June 11, 2012, Socko filed a motion for partial summary judgment. In its response on August 3, 2012, Mid–Atlantic did not dispute that the Non–Competition Agreement was signed during the course of Socko's employment. Mid–Atlantic likewise did not deny Socko's contention that he did not receive a benefit or beneficial change in his employment status in exchange for signing the Non–Competition Agreement. Instead, Mid–Atlantic argued that the Non–Competition Agreement contains the language "intending to be legally bound," and that as a result, the Uniform Written Obli-

---

1. Pursuant to its paragraph 15, the Non–Competition Agreement superseded all prior agreements between Socko and Mid–Atlantic (including the previously mentioned March 2007 and June 2009 employment agreements).

2. Socko also included claims against Mid–Atlantic under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.3. These claims were settled and discontinued on June 12, 2013.

gations Act, 33 P.S. § 6 ("UWOA"), prevents the avoidance of any written agreement for lack of consideration.

In a memorandum opinion and order dated October 15, 2012, the trial court granted Socko's motion for partial summary judgment, concluding as follows:

> [Mid–Atlantic] contends that a stated intent 'to be legally bound' in the [Non–Competition Agreement] constitutes adequate consideration under Pennsylvania common law and the UWOA to make [the Non–Competition Agreement], including the non-competition clause, enforceable. Our Superior Court has held to the contrary, stating 'where a restrictive covenant is executed after the commencement of employment, it will not be enforced unless the employee restricting himself receives a corresponding benefit or change in status.' *Ruffing v. 84 Lumber Co.* [410 Pa.Super. 459], 600 A.2d 545 (Pa.Super.1991). The parties agree that [Socko] received no additional benefit or any change in employment status.... The [c]ourt ... finds the [Non–Competition Agreement] is invalid for want of consideration.

Trial Court Opinion, 10/15/2012, at 5.

This timely appeal followed, in which Mid–Atlantic contends that the trial court erred in granting Socko's motion for partial summary judgment by failing to apply the UWOA. Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is as follows:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*JP Morgan Chase Bank, N.A. v. Murray,* 63 A.3d 1258, 1261–62 (Pa.Super.2013) (quoting *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001)).

The issue presented here on appeal does not appear to have ever been addressed by any Pennsylvania appellate court. The parties each argue the applicability of conflicting federal district court cases in support of their desired outcome. *Compare Surgical Sales Corp. v. Paugh,* 1992 WL 70415 (E.D.Pa. March 31, 1992) (UWOA does not permit enforcement of a restrictive covenant in the absence of consideration), *with Latuszewski v. Valic Financial Advisors, Inc.,* 2007 WL 4462739 (W.D.Pa. December 19, 2007) (UWOA permits the enforcement of a restrictive covenant in the absence of consideration). We do not find the reasoning of either of these cases to be persuasive, and instead conclude that it is necessary to review the history of the enforcement of restrictive covenants in Pennsylvania to determine

the precise nature of the consideration required to support them.

Restrictive covenants not to compete have always been disfavored in Pennsylvania because they "have been historically viewed as a trade restraint that prevent[ ] a former employee from earning a living." *Hess v. Gebhard & Co., Inc.*, 570 Pa. 148, 808 A.2d 912, 917 (2002).[3] Indeed, in *Morgan's Home Equip. Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838, 845 (1957), our Supreme Court reiterated that "[i]t has long been the rule at common law, that contracts in restraint of trade made independently of a sale of a business or contract of employment are void as against public policy regardless of the valuableness of the consideration exchanged therein." *Id.* at 845 (citing *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 281–82 (6th Cir.1898) (Taft, J.), *affirmed*, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899)); *see also Appeal of Harkinson*, 78 Pa. 196, 203 (1875) ("It must be borne in mind that agreements in restraint of trade generally are void."); *Gompers v. Rochester*, 56 Pa. 194, 197 (1867) ("Agreements in restraint of trade generally, are void."); *Keeler v. Taylor*, 53 Pa. 467, 468–69 (1866) ("The general rule is that all restraints of trade, if nothing more appear, are bad.").

With respect to restrictive covenants entered into ancillary to the sale of a business or a contract of employment, our Supreme Court has offered this history:

Such general covenants not to compete present centuries old legal problems. The earliest cases were decided against the economic background of a chronic shortage of skilled workers in England, the result of the virulent epidemics of the Black Death during the fourteenth century. It was not surprising, then, that all covenants to refrain from practicing a trade were held to be void as against public policy. This policy carried over into the early seventeenth century when the grants of exclusive trading privileges by the Sovereign caused widespread public indignation which broadened into a dislike for all restraints upon the free exercise of trade. However, by the eighteenth century England found itself in the midst of a new commercial era, and adjusting to changed economic conditions, the courts upheld at common law contracts in partial restraint of trade provided they were ancillary to a principal transaction, and were reasonably limited both in geographical extent and duration of time.

*Morgan's*, 136 A.2d at 844.

In *Morgan's*, our Supreme Court held that a covenant not to compete may be enforceable if set forth in an employment agreement executed upon the "taking of employment," which the Court defined as "entering into a regular employment relationship in contradistinction to provisional employment." *Id.* at 845. Subsequent cases interpreted this ruling to provide that the initial taking of employment constituted adequate consideration to permit the enforcement of a restrictive covenant. In *Barb–Lee Mobile Frame Co. v. Hoot*, 416 Pa. 222, 206 A.2d 59 (1965), the Supreme Court held that "[w]here the restrictive covenant is ancillary to a contract establishing an employment relationship, where none existed previously thereto, the employment constitutes consideration supporting that covenant, as well as all other

---

**3.** "The development of a body of law in Pennsylvania both paralleled and deviated from the development of the law within other jurisdictions. A review of the case law dealing with employee non-competition agreements reveals that an overwhelming majority of jurisdictions, including Pennsylvania, require, at a minimum, that such contracts be reasonably related to the protection of a legitimate business interest." *Hess*, 808 A.2d at 918.

terms of the employment contract."[4] *Id.* at 61. Conversely, in *Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A.2d 292 (1967), the Supreme Court held that a restrictive covenant in an employment contract executed 12 years after the beginning of employment was unenforceable for lack of consideration. *Id.* at 293–94 ("[S]ince the 1965 agreement was clearly not ancillary to the taking of employment, the restrictive covenant therein is not valid or enforceable.").

Subsequently, however, in *Jacobson & Co. v. Int'l Env't Corp.,* 427 Pa. 439, 235 A.2d 612 (1967), our Supreme Court indicated that its rulings in *Morgan's, Barb-Lee,* and *Capital Bakers* did not require that all restrictive covenants must be included in the *initial* employment contract to be enforceable. *Id.* at 618.

> This would be an unrealistic requirement, for in many instances, including the present case, the insertion of a restrictive covenant in the original contract would serve no valid purpose. An employer who hires a novice has no desire to restrict his present competitive force. Only when the novice has developed a certain expertise, which could possibly injure the employer if unleashed competitively, will the employer begin to think in terms of the protection of a restrictive covenant. This is an economic reality, and the law should be influenced by it. It is true that a restrictive covenant in the novice's contract might well be held to be reasonable as applied to a novice who remained a novice. But an interpretation of *Mor-gan* as appellants urge would require a company to insert such a covenant in every contract. The uncertainty resulting and the litigation unleashed stagger the imagination. Far better to allow the parties themselves, when they feel the employee's degree of expertise warrants it, to decide when to insert a restrictive covenant.

*Id.* at 618–19. In *Jacobson,* the Supreme Court indicated that in *Capital Bakers* it had found the restrictive covenant unenforceable because the new employment agreement had been signed "without any change in his employment status." *Id.* at 618. In contrast, in Jacobson "there was a clear change in Kiley's employment status when the covenant was agreed to." *Id.* This change in employment status thus constituted the necessary consideration for enforcement of the covenant not to compete.

The Supreme Court next addressed this issue in *Maintenance Specialties, Inc. v. Gottus,* 455 Pa. 327, 314 A.2d 279 (1974), which affirmed a chancellor's ruling that the restrictive covenant was not enforceable because, following *Capital Bakers,* the appellant did not allege any beneficial change in employment status when signing a later employment agreement containing the covenant not to compete (having previously entered into an oral employment contract approximately one year prior). *Id.* at 281. In a detailed concurring opinion joined by a majority of the members of the Court, Chief Justice Jones summarized the law in this area by indicating that restrictive covenants in restraint of trade

---

4. In *Beneficial Fin. Co. of Lebanon v. Becker,* 422 Pa. 531, 222 A.2d 873 (1966), the Supreme Court addressed the issue of what constitutes the "taking of employment," rejecting the argument that an employment contract was not "ancillary to the taking of employment" because it was signed two days after the beginning of employment. *Id.* at 876. "It would be a far too narrow construction of 'ancillary' if we held that a contract of employment was not auxiliary to the taking of employment when the contract was prepared the day the employee commenced work, signed by the employee two days later, and accepted by the out-of-state parent corporation nine days after that." *Id.*

are enforceable only if the employer satisfies three requirements: (1) the covenant must relate to (*i.e.*, be ancillary to) either a contract for the sale of goodwill or other subject property or to a contract of employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory. *Id.* at 282 (Jones, C.J., concurring). "All three requirements must coalesce before a restrictive covenant is enforceable." *Id.* (Jones, C.J., concurring).

With regard to the second requirement, Chief Justice Jones addressed the "quality of consideration required to support a restrictive covenant," and concluded that "our prior case law requires the presence of *valuable consideration* to support a covenant not to compete." *Id.* at 283–84 (Jones, C.J., concurring) (emphasis added). Amplifying on what constitutes "valuable consideration," Chief Justice Jones indicated:

> Analysis reveals that there are two types of consideration which will support a restrictive covenant in an employment contract. When the restrictive covenant is contained in the initial contract of employment, consideration for the restrictive covenant is the job itself. When the restrictive covenant is added to an existing employment relationship, however, it is only enforceable when the employee who restricts himself receives a corresponding benefit or change in status. An employee's continued employment is not sufficient consideration for a covenant not to compete which the employee signed after the inception of his employment, where the employer makes no promise of continued employment for a definite term.

*Id.* at 282–83 (Jones, C.J., concurring).

In *George W. Kistler, Inc. v. O'Brien,* 464 Pa. 475, 347 A.2d 311 (1975) (plurality),[5] our Supreme Court again found unenforceable a restrictive covenant set forth in an employment contract executed after the employee had previously entered into a binding oral employment agreement and commenced work, without any corresponding benefit or change in job status. *Id.* at 316. Citing *Gottus,* the Supreme Court reiterated that "[w]hile a restrictive covenant, in order to be valid need not appear in the initial contract, if it is agreed to at some later time it must be supported by new consideration."[6] *Id.*

---

**5.** Then–Justice Nix authored the decision in *Kistler,* and his opinion announcing the decision of the Court was joined by Justice Pomeroy. Justice Roberts wrote a concurring opinion joined by Chief Justice Jones. Three justices (Eagan, O'Brien, and Manderino) concurred in the result.

In his concurring opinion, Justice Roberts suggested that the exclusive focus in these cases should be on whether the restrictive covenant was entered ancillary to the taking of employment, as discussed in *Morgan's,* rather than on the need for adequate consideration to support the enforceability of the covenant, as discussed in the cases decided thereafter. *Kistler,* 347 A.2d at 316–17 (Roberts, J., concurring), Justice Roberts thus indicated his preference for the pre-*Jacobson* position that restrictive covenants were never enforceable unless entered into at the initial taking of employment, regardless of the valuableness of any consideration exchanged. *Id.* at 317 (Roberts, J., concurring). As such, in *Kistler* neither Justice Roberts nor Chief Justice Jones took any position regarding the forms of consideration inadequate to support the enforceability of a restrictive covenant in Justice Nix's opinion announcing the decision of the Court.

**6.** Our Supreme Court recently reaffirmed the basic principles of *Gottus* and *Kistler* in its decision in *Pulse Technologies, Inc. v. Notaro,* 620 Pa. 322, 67 A.3d 778 (2013). In that case, this Court had determined that an offer letter (not containing a restrictive covenant) constituted the initial contract of employment, and that a later signed employment agreement (containing a restrictive covenant)

In *Kistler*, the Supreme Court excluded three forms of consideration it found inadequate to support a covenant not to compete. First, citing to Chief Justice Jones' concurring opinion in *Gottus*, the Court held that continued employment does not constitute sufficient consideration even if the employment relationship was terminable at the will of either party. *Id.* at 316. Second, the execution of the employment agreement under seal did not constitute valuable consideration to support the restrictive covenant.[7] *Kistler*, 347 A.2d at 316 n. 4. Third, the employment agreement recitation of nominal consideration ($1.00) was inadequate consideration for the restrictive covenant. *Id.*

Subsequent to the Supreme Court's decisions in *Gottus* and *Kistler*, this Court has consistently and without exception held that "[w]hen an employee enters into an employment contract containing a covenant not to compete subsequent to employment, ... the covenant 'must be supported by new consideration which could be in the form of a *corresponding benefit to the employee or a beneficial change in his employment status.*'" *Modern Laundry & Dry Cleaning v. Farrer*, 370 Pa.Super. 288, 536 A.2d 409, 411 (1987) (emphasis added) (citing *Gottus* and *Kistler*); *see also Insulation Corp. of America. v. Brobston*, 446 Pa.Super. 520, 667 A.2d 729, 733 (1995); *Davis & Warde, Inc. v. Tripodi*, 420 Pa.Super. 450, 616 A.2d 1384, 1387

(1992), *appeal denied*, 536 Pa. 624, 637 A.2d 284 (1993); *Ruffing v. 84 Lumber Co.*, 410 Pa.Super. 459, 600 A.2d 545, 548 (1991), *appeal denied*, 530 Pa. 666, 610 A.2d 46 (1992). The trial court relied upon this language to decide this case, ruling that Socko received no "corresponding benefit or beneficial change in his employment status," and that the UWOA did not relieve Mid–Atlantic of its obligation to provide valuable consideration to enforce the covenant not to compete. Trial Court Opinion, 10/15/2012, at 5.

Section 6 of the UWOA provides that "[a] written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." 33 P.S. § 6. Pennsylvania courts have interpreted this section to provide that a written agreement shall not be void for lack of consideration if it contains an express statement that the signer intends to be legally bound by it. *See, e.g., Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 433 (2004).

We cannot agree with Mid–Atlantic that application of the UWOA rectifies the lack of consideration in this case. For most contracts, Pennsylvania appellate

---

was therefore unenforceable (pursuant to *Gottus* and *Kistler*) for a lack of new consideration. *Id.* at 782. The Supreme Court reversed, concluding that the offer letter was not a binding contract of employment and thus the employment contract signed by the employee was incident to the taking of employment and thus supported by adequate consideration. *Id.* at 781 (citing *Beneficial Finance*, 222 A.2d at 875).

**7.** In general, Pennsylvania law continues to recognize the maxim that when a contract is executed under seal, a party may not raise a

lack or want of consideration as a defense except where there is fraud. *Selden v. Jackson*, 425 Pa. 618, 230 A.2d 197, 197–98 (1967); *SKF USA, Inc. v. Workers' Comp. Appeal Bd. (Smalls)*, 714 A.2d 496, 501 (Pa. Cmwlth.1998) (citing *Barnhart v. Barnhart*, 376 Pa. 44, 101 A.2d 904 (1954)); *Deangelo Bros., Inc. v. Platte River Ins. Co.*, 2010 WL 2635983, at *5 (M.D.Pa. June 29, 2010). A seal imports consideration and takes the place of proof of the existence of consideration in the absence of fraud. *In re Conrad's Estate*, 333 Pa. 561, 3 A.2d 697, 699 (1938).

courts have historically held that while the existence of consideration is a necessary element for any enforceable contract, the adequacy of the consideration is not a factor to be considered in determining the validity and enforceability of a contract. *See, e.g., Thomas v. Thomas Flexible Coupling Co.,* 353 Pa. 591, 46 A.2d 212, 216 (1946) ("[I]t is an elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration.") (citing *Hillcrest Foundation v. McFeaters,* 332 Pa. 497, 2 A.2d 775, 778 (1938)). As reviewed hereinabove, however, with regard to restrictive covenants in employment contracts, our Supreme Court has repeatedly inquired into the adequacy of consideration required to support them. The reasons for this differing approach are clear, as restrictive covenants are disfavored in Pennsylvania because they are in restraint of trade and may work significant hardships on employees agreeing to them. For these reasons, our Supreme Court, as reviewed hereinabove, has held that only valuable consideration will support their enforcement, and has rejected as inadequate various forms of consideration that would support the enforcement of other types of contracts, including the benefit of the continuation of at-will employment, contracts under seal, and nominal consideration.

Language in an employment contract that the parties intend to be legally bound does not constitute valuable consideration in this context. We find significant the Supreme Court's refusal to recognize a seal as adequate consideration to support a covenant not to compete. *See, e.g., Kistler,* 347 A.2d at 316 n. 4; *Gompers v. Rochester,* 56 Pa. 194, 197 (1867) (an agreement in restraint of trade "is the only exception to the rule, that a contract under seal imports a consideration which a party is not permitted to deny."); *see also Newman v. Sablosky,* 268 Pa.Super. 85, 407 A.2d 448, 451 (1979) ("While a seal to an agreement imports consideration, the rule is inapplicable in a court of equity to enforce a restrictive covenant."). A seal and the UWOA have precisely the same legal effect, namely to import consideration into a contract and thus eliminate the need for proof of the existence of consideration. *Morgan's,* 136 A.2d at 845 n. 12; *Fedun v. Mike's Cafe, Inc.,* 204 Pa.Super. 356, 204 A.2d 776 (1964) (the UWOA is a "valid substitute for consideration."), *affirmed,* 419 Pa. 607, 213 A.2d 638 (1965).

 Because a seal does not constitute adequate consideration to support a covenant not to compete, then clearly the UWOA is similarly inadequate in this context. Again, our Supreme Court has consistently instructed that restrictive covenants in employments are disfavored, both because they are in restraint of trade and because they may work considerable hardships on employees bound by them. As a result, for a restrictive covenant to be enforceable, the employee must receive actual valuable consideration in exchange for signing an employment agreement containing one. When the restrictive covenant is contained in the initial contract of employment, the consideration is the job itself. But when the restrictive covenant is added to an existing employment relationship, however, to restrict himself the employee must receive a corresponding benefit or a change in job status. Contractual language satisfying the UWOA does not provide the employee with any actual benefit, and thus cannot suffice as a form of consideration that is adequate to support the later enforcement of the covenant not to compete against the employee.

Because Mid–Atlantic concedes that it did not provide valuable consideration to Socko when he executed the Non–Competition Agreement, the trial court did not

err in its determination that the covenant not to compete is unenforceable. As a result, we affirm the trial court's order dated October 15, 2012.

Order affirmed.