J-A04023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PENNSYLVANIA ELECTRIC COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BERWIND CORPORATION, | |
| Appellee | No. 972 WDA 2014 |

Appeal from the Order Entered May 20, 2014
In the Court of Common Pleas of Somerset County
Civil Division at No(s): 1383 Civil 2009

BEFORE:  BOWES, OLSON AND STRASSBURGER, JJ.*

MEMORANDUM BY OLSON, J.:                              **FILED APRIL 28, 2015**

Appellant, Pennsylvania Electric Company, appeals from the order entered on May 20, 2014, granting a motion for summary judgment filed by Berwind Corporation (Berwind).  Upon review, we affirm.

The trial court summarized the facts of this case as follows:

> [Appellant] is a Pennsylvania public utility providing electrical service within the Commonwealth of Pennsylvania and has it principal office at 1001 Broad Street, Johnstown, Pennsylvania 15907.  [Berwind] is a Pennsylvania Corporation with its principal place of business at 3000 Centre Square West, 1500 Market Street, Philadelphia, Pennsylvania 19102.  [Berwind] is the owner of certain mineral-rich land located in Shade Township, Somerset County, Pennsylvania.  At all pertinent times, [Berwind] has intended to mine the coal located on this property.  In order to avoid having to go through with the process to condemn a right-of-way on [Berwind's] property, [Appellant] and [Berwind] entered into a right-of-way agreement (the "Agreement"), which granted [Appellant] a right-of-way over [Berwind's] land on which to erect and maintain a

*Retired Senior Judge assigned to the Superior Court.

power line and related facilities. Specifically, the Agreement granted [Appellant] a right-of-way described as:

> a right-of-way for a power line within a width of not exceeding one hundred twenty (120) feet, subject to the exceptions and reservations hereinafter set forth, together with the right and privilege to construct, maintain, repair and operate an electric power line, with the necessary poles, wires, guy stubs and anchors for the transmission of electrical energy over and through the hereinafter described lands situated in the Township of Shade, County of Somerset and State of Pennsylvania.

The Agreement specified that "the rights and privileges hereby granted shall continue so long as [Appellant] shall operate and maintain in good and safe repair the said power line on the herein described premises… ." Moreover, the Agreement specified, in pertinent part:

> [Berwind], for itself, its successors, lessees, assigns and grantees, hereby expressly excepts and reserves the rights and privilege to mine and remove, by any method or methods chosen by it, all of the coal and minerals, including the pillars, owned by it or hereafter acquired by it, underlying or adjoining the fee and/or mineral lands of [Berwind] over which the said power line is to be constructed and maintained; and also the exclusive right to use for farming purposes and to cross at any point the said power line with power lines, water lines, streets, alleys, tramroads, railways, above or below ground; all of these rights to be exercised by [Berwind], its successors, lessees and assigns, without let, hindrance or molestation, and without liability for damages.

Furthermore, the Agreement stated:

> [Appellant] hereby remises and releases [Berwind], its successors, lessees and assigns, from any and all damages whatsoever which may result to the power line and appurtenances of [Appellant] on the right-of-way herein granted by reason of the mining

- 2 -

and removing of all the coal and minerals or any part thereof, or by reason of the exercise of any of the rights and privileges hereby excepted and reserved.

The Agreement was made and entered into by the parties on January 10, 1977. Thereafter, [Appellant] promptly installed a power line, along with poles and other equipment necessary for the transmission of electrical energy within the right-of-way, and [Appellant] has since operated and maintained the power line in good and safe repair.

No dispute arose between the parties until October 17, 2007, when [Berwind's] lessee notified [Appellant] that it planned to mine coal located within the right-of-way. On May 14, 2008, [Appellant's] representative responded, writing that [Appellant] agreed to permit mining only if [Berwind] agreed to certain written restrictions that would be placed on the coal mining activities with the intention of protecting the power line and electrical facilities. On June 20, 2008, [Berwind's] representative rejected the restrictions and advised [Appellant] that the stated conditions were unacceptable as they contradicted the Agreement. Sometime thereafter, [Berwind] offered [Appellant] the option of relocating its power line and facilities to another area on [Berwind's] property at [Appellant's] cost, or paying [Berwind] for the unmined coal within the right-of-way. [Berwind] further advised [Appellant] that [it] would proceed to mine the coal even if the power line was damaged in the process. In May 2009, [Appellant] opted to move the power line to a different location on [Berwind's] property, but reserved the right to seek damages from [Berwind].

After obtaining approval from the Pennsylvania Public Utility Commission (hereinafter, the "PUC"), [Appellant] relocated its power line and electrical facilities, calculated in accordance with [Appellant's] Tariff No. 79 (hereinafter "Tariff"), totaled $420,640.18.

Trial Court Opinion, 5/20/2014, at 3-5 (record citations omitted).

The case progressed procedurally as follows:

- 3 -

[Appellant] instituted this action on December 15, 2009 by filing a complaint for declaratory judgment. On January 15, 2010, in response to the complaint, [Berwind] filed an answer and new matter to [Appellant's] complaint for declaratory judgment and counterclaim for declaratory judgment. On March 24, 2010, [Appellant] filed an amended complaint for declaratory judgment, seeking a declaration from [the trial court] that [Berwind was] obligated to reimburse [Appellant] for the cost of relocating its power line and electrical facilities. On April 13, 2010, in response to the amended complaint, [Berwind] filed its answer to [the] amended complaint, and counterclaim for declaratory judgment. In its counterclaim, [Berwind] request[ed] that [the trial court] declare that [Berwind had] no liability to [Appellant] for costs associated with the relocation of [Appellant's] power line and related facilities.

On December 3, 2013, [Appellant] filed a motion for summary judgment, a brief in support [], and [a] statement of material facts[]. […] On January 17, 2014, [Berwind] filed a cross-motion for summary judgment, a brief in opposition to [Appellant's] motion for summary judgment and in support of its cross-motion for summary judgment, and a response to [Appellant's] statement of material facts[]. [The parties filed responses and replies.]

On April 16, 2014, [the trial court] heard argument by counsel on the parties' cross-motions for summary judgment. [On May 20, 2014, the trial court entered an order, and filed an accompanying opinion,] deny[ing] [Appellant's] motion for summary judgment and grant[ing] [Berwind's] cross-motion for summary judgment.

*Id.* at 1-3 (unnecessary capitalization and parentheticals omitted). This timely appeal resulted.[1]

_____

[1] Appellant filed a notice of appeal on June 16, 2014. On June 25, 2014, the trial court entered an order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a concise statement of errors complained of on appeal. Appellant complied on July 15, 2014. Relying upon its prior opinion issued
*(Footnote Continued Next Page)*

- 4 -

On appeal, Appellant presents the following issues for our review:

1. Did the lower court err in failing to find that the right-of-way agreement granted the right-of-way in [Appellant] in perpetuity so long as the electrical facilities were maintained and did not contain any provision requiring [Appellant] to relocate them or buy any coal?

2. Did the lower court err in failing to find that Berwind, as the party benefitted, must pay for the relocation of electrical facilities if Berwind wants to strip mine the coal under the area needed to provide surface support for the electrical facilities?

3. Did the lower court err in construing the reservation of right to mine and remove coal and the waiver of damages to allow Berwind to recklessly or intentionally harm the electrical facilities to strip mine coal in the area needed to provide surface support for the electrical facilities requiring [Appellant] to pay for the relocation of the electrical facilities or buy the coal in order to avoid having them intentionally destroyed by Berwind?

4. Did the lower court err in disregarding [Appellant's] filed and approved PUC Tariff in determining whether Berwind was responsible for payment of the relocation costs and in finding that Berwind was not an "applicant" when it demanded that [Appellant] relocate the electrical facilities for its benefit?

5. If this matter is reversed, should the matter be referred to the PUC to determine the proper amount to be awarded to [Appellant] for the relocation of the electrical facilities?

Appellant's Brief at 3 (some capitalization omitted).

_____
*(Footnote Continued)*

on May 20, 2014, the trial court entered an order, on July 23, 2014, declining further supplementation.

Appellant's first three issues are inter-related and, thus, we will examine them together. Appellant contends that the trial court erred by granting summary judgment to Berwind based upon its interpretation of the right-of-way contract at issue. More specifically, Appellant claims that "[t]he agreement does not contain any provision whatsoever that requires [Appellant] to relocate its facilities for any reason." *Id.* at 17. Appellant argues that by demanding relocation or threatening destruction of its power lines, Berwind took actions that completely denied Appellant use of the easement.[2] *Id.* at 18-23. Relying principally on the Pennsylvania Supreme Court's decision in *Minard Run Oil Co. v. Pennzoil Co.*, 214 A.2d 234 (Pa. 1965), Appellant avers that because Berwind sought to change the *status quo*, Berwind bore the relocation costs. *Id.* at 24-27. Appellant also contends that the trial court erred by taking into account the "nominal" consideration it paid for the easement ($12,000.00) or the potential of Berwind instituting condemnation proceedings, in rendering its opinion. *Id.* at 28-29. Finally, Appellant argues that the reservation and release

_____

[2] For this proposition, Appellant cites this Court's decisions in *Amerikohl Mining Co., Inc. v. Peoples National Gas Co.*, 860 A.2d 547 (Pa. Super 2004), as well as the Pennsylvania Supreme Court's decision in *Merrill v. Manufacturers Light and Heat Co.*, 185 A.2d 573 (Pa. 1962). Appellant maintains "[t]he import of the cases involving improved lands indicate that the courts in this Commonwealth have been reluctant to require the relocation of the improvements at the easement holder's expense or permit the destruction of the improvements on the surface." Appellant's Brief at 23.

provisions of the agreement "do not support the claim that [Appellant] consented in advance to Berwind engaging in intentional or reckless conduct that would damage or destroy the very facilities to be placed on the granted right-of-way under the agreement." *Id.* at 31. Appellant argues that the term damages "contemplates unintentional injury to the power lines, not the intentional destruction of them." *Id.* at 40.

Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is as follows:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Socko v. Mid-Atlantic System of CPA, Inc.*, 99 A.3d 928, 930 (Pa. Super. 2014).

"It is well established that the same rules of construction that apply to contracts are applicable in the construction of easement grants." **_Zettlemoyer v. Transcon. Gas Pipeline Corp._**, 657 A.2d 920, 924 (Pa. 1995). Regarding contract interpretation, we have determined:

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

> We have explained:

>> Contracts are enforceable when the parties reach a mutual agreement, exchange consideration, and have set forth the terms of their bargain with sufficient clarity. An agreement is sufficiently definite if it indicates that the parties intended to make a contract and if there is an appropriate basis upon which a court can fashion a remedy. Moreover, when the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document.

**_Stephan v. Waldron Elec. Heating & Cooling LLC_**, 100 A.3d 660, 665 (Pa. Super. 2014) (internal citations omitted).

At issue here, the right-of-way agreement provides, in pertinent part:

> This Agreement, made in duplicate, and entered into this 10th day of January, A.D. 1977, by and between

BERWIND CORPORATION, a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, party of the first part, and PENNSYLVANIA ELECTRIC COMPANY, likewise a corporation of Pennsylvania, party of the second part.

WITNESSETH:

That for and in consideration of the convenants and agreements hereinafter contained and on the part of [Appellant] to be kept, performed and observed, as well as for and in consideration of the sum of One Dollar ($1.00), and for other good and valuable considerations, receipt of which is hereby acknowledged, [Berwind] hereby gives and grants unto the party of the second part a right-of-way for a power line within a width of not exceeding one hundred twenty (120) feet, subject to the exceptions and reservations hereinafter set forth, together with the right and privilege to construct, maintain, repair and operate an electric power line, with the necessary poles, wires, guy stubs and anchors for the transmission of electrical energy over and through the hereinafter described lands situated in the Township of Shade, County of Somerset and State of Pennsylvania. It is distinctly understood and agreed that the fee simple in the land hereinafter described is not hereby granted, but only the rights and privileges for the purpose aforesaid, subject to the agreements and conditions herein contained.

* * *

[Berwind], for itself, its successors, lessees, assigns and grantees, hereby expressly excepts and reserves the right and privilege to mine and remove, by any method or methods chosen by it, all of the coal and minerals, including the pillars, owned by it or hereafter acquired by it, underlying or adjoining the fee and/or minerals lands of [Berwind] over which the said power line is to be constructed and maintained; and also the exclusive right to use for farming purposes and to cross at any point the said power line with power lines, water lines, streets, alleys, tramroads, railways, above or below ground; all of these rights to be exercised by [Berwind], its successors, lessees

- 9 -

and assigns, without let, hindrance or molestation, and without liability for damages.

\* \* \*

SECOND [PARAGRAPH]: [Appellant] hereby remises and releases [Berwind], its successors, lessees, and assigns, from any and all damages whatsoever which may result to the power line and appurtenances of [Appellant] on the right-of-way herein granted by reason of the mining and removing of all the coal and minerals or any part thereof, or by reason of the exercise of any of the rights and privileges hereby excepted and reserved.

Right-of-Way Agreement, 1/10/1977, at 1-2.

Here, the plain language of the agreement provides that Berwind, as land owner, expressly reserved "the right and privilege to mine and remove, by **any method** or methods chosen by it, **all of the coal** and minerals … underlying … lands of [Berwind] over which the said power line is to be constructed and maintained." *Id.* at 1 (emphasis added). There is no ambiguity regarding whether Berwind was entitled to mine all of the coal under the right-of-way, by any method. Moreover, Berwind was permitted to exercise "all of these rights … without let, hindrance or molestation, and **without liability** for damages." *Id.* (emphasis added). Appellant also agreed to "remise[] and release[] [Berwind] … from any and all damages whatsoever which may result to the power line and appurtenances of [Appellant] on the right-of-way … by reason of the mining and removing of all the coal and minerals[.]" *Id.* at 2. When the provisions are read together, it is clear that Berwind provided land to Appellant for a right-of-

- 10 -

way, conditioned upon the right to mine all of the coal underneath the easement at any time, by any method. Had Berwind mined the coal before Appellant relocated its power lines, Berwind would have been held harmless for any damage to the original structures.

We reject Appellant's argument that Berwind sought to engage in intentional or reckless conduct that would damage or destroy the power lines. Berwind sought to exercise its reserved right to mine all of the land under the right-of-way. While complete destruction was a distinct possibility, there is nothing of record to suggest that Berwind intended to intentionally or outright destroy the power lines. Rather, at all times, Berwind sought to exercise its express reservation to mine the land, with ancillary damage to Appellant almost certain to occur.

We reject also Appellant's suggestion that relocation changed the *status quo* between the parties, because the agreement always contemplated mining and expressly granted Berwind the option to do so, at its sole discretion. There is no language to suggest that Berwind was required to negotiate further with Appellant before mining operations under the right-of-way began. Instead, Berwind reserved the right to remove **any** and all minerals, by **any** method, underlying the land where the power line was constructed and maintained. The plain language did not place limitations on the amount of coal mined or the method of mining. Again, had Berwind exercised its rights and begun mining operations under the

agreement, without first offering Appellant the opportunity to relocate, Berwind could have done so "without let, hindrance or molestation, and without liability for damages." *Id.* Hence, when Berwind notified Appellant of its intentions to mine coal under the right-of-way, under the express reservation, it then became Appellant's decision to either bear the brunt of potential damage or move its power lines at its own expense, because Appellant also agreed that Berwind would be held harmless for any damages resulting from mining operations.

While it is true that the right-of-way agreement is silent regarding relocation, to adopt Appellant's reasoning would fundamentally rewrite the agreement by holding Berwind liable for damages for exercising its rights as clearly delineated under the agreement. The argument that relocation expenses to avoid damages is somehow different than suffering actual damages ignores the reality of the situation. Had Berwind proceeded with mining operations and destroyed the power lines in the process, Appellant would have suffered damages and Berwind would not have been liable. Thus, Appellant would have been responsible for those damages, as well as damages for potential hazards or interruptions in service caused by the damage. If we were to adopt Appellant's logic, liability would be assigned to different parties under the same agreement, depending on how Berwind chose to proceed in exercising its clearly established rights. Under such a

scenario, Berwind would have been better off mining without Appellant's input and would not have been liable for damages.

Likewise, we reject Appellant's reliance on **Merrill**, **Amerikohl**, and **Minard Run** as those cases are unmistakably distinguishable. In both **Merrill** and **Amerikohl**, the courts conducted plain language interpretations of easement agreements in relation to mining operations. However, in those matters the contracts contained language, not implemented here, related specifically to deep mining operations and whether there were limitations to the manner in which coal could be mined. More specifically, in those matters, the right-of-way agreements contained releases from landowner liability for the removal of coal in deep mining operations requiring surface support, but did not relieve the landowners for damages due to strip mining. **See Merrill**, 185 A.2d at 576-577 (release contained in an instrument expressly granting pipeline right-of-way easement, relieving grantor of liability for damage to pipeline from the removal of "surface support" thereunder in the mining of coal, dealt with the removal of the coal and rocky or sand strata which lay between the coal measures and did not permit surface destruction or strip mining.); **see also Amerikohl**, 860 A.2d at (easement agreement release merely granted landowner the right to mine without being required to provide or leave support to the overlying strata, but did not specifically mention surface mining or deep mining and only contemplated deep mining.)

In **_Minard Run_**, the landowner sought to compel the pipeline easement holder to move an established pipeline so that the landowner could improve a roadway over it; in that case, however, there was no contractual language providing for such future conditions. **_See Minard Run_**, 214 A.2d at 236 (landowner's right to the full use of the surface of the land was necessarily circumscribed by the granted easement and pipeline owners had the right to insist that the easement remain as granted.)

Here, however, as previously discussed, the express language of the right-of-way agreement has no such restrictions. Instead, the agreement provided Berwind with the right to remove any and all minerals, by any method. As the trial court noted, this case more closely resembles the facts and issues examined in **_Mount Carmel R. Co. v. M.A. Hanna Co._**, 89 A.2d 508 (Pa. 1952). **_Compare Mount Carmel_**, 89 A.2d at 512 (landowner retained all coal under railroad's right of way "with the full and free right of digging for mining and taking away [coal], at any time or times, _or in any manner or by any method of mining_ without let or hinderance of the said [railroad] and without any compensation therefor or liability of any kind or nature whatever[;]" strip mining is an excepted manner or method of coal mining.)(emphasis in original).

Finally, because we find no ambiguity in the clear contract language, there was no reason for the trial court to look outside the four corners of the contract to effectuate the parties' intent, _i.e._, consideration Appellant paid

for the easement ($12,000.00) or the potential of Berwind instituting condemnation proceedings. Moreover, it should be noted that the agreement specifies "[t]he true, full and complete value of the right-of-way herein granted, including liens and other encumbrances, if any[,] is $12,000.00." Right-of-Way Agreement, 1/10/1977, at 3. In **Minard Run**, our Supreme Court looked at the amount of consideration paid for the easement and determined, "[the landowner] has been and is in the oil, gas and timber business. It sold the pipeline easement for the comparatively insignificant sum of $788[.00], which in and of itself, would suggest that it never intended to relinquish the right to use the rest of the land in a manner profitable to its own business." **Minard Run**, 214 A.2d at 235. Thus, we question whether it was error for the trial court to consider the amount of consideration paid. However, because the contract language was not ambiguous, additional reliance on parol evidence is harmless in light of our prior determinations.

For all of the foregoing reasons, Appellant's first three claims are without merit. Appellant entered into a conditional easement agreement that permitted Berwind to mine all of the coal under the right-of-way by any method. The easement agreement held Berwind not liable for damages when exercising those rights. Appellant was given the option of relocating to avoid damage to its power lines, which it chose to do. That cost is borne by

Appellant. Thus, the trial court properly entered summary judgment in Berwind's favor.

Appellant's last two remaining issues are inter-related so we will examine them together. Appellant argues that, as a public utility, it filed Tariff No. 79, with the Pennsylvania Public Utility Commission that requires Berwind to pay relocation costs. Appellant's Brief at 43-47. Appellant requests that, if this Court agrees, we refer the issue to the Public Utilities Commission, under its primary jurisdiction, for a determination of costs. *Id.* at 48-50.

The Commonwealth Court has stated:

> A tariff is a set of operating rules imposed by the State that a public utility must follow if it wishes to provide services to customers. It is a public document which sets forth the schedule of rates and services and rules, regulations and practices regarding those services. It is well settled that public utility tariffs must be applied consistently with their language. 66 Pa.C.S.A. § 1303. Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility.

***PPL Elec. Utilities Corp. v. Pennsylvania Pub. Util. Comm'n***, 912 A.2d 386, 402 (Pa. Cmwlth. 2006).

Public utility tariffs are used in governing the services public utilities provide to their customers. In this instance, relocation was not based upon providing electrical service to a customer. Rather, it was based upon the clearly defined terms of the written agreement that reserved Berwind's right to mine under an easement granted to Appellant. Moreover, upon review of

the record, Tariff No. 79 did not become effective until January 11, 2007, almost 30 years after the parties entered into the right-of-way agreement. Simply stated, Berwind cannot be bound unilaterally by the terms of Tariff No. 79. Thus, Appellant's fourth assignment of error lacks merit. Having determined that Appellant was responsible for relocation costs, an additional determination of costs is unnecessary. Hence, Appellant's fifth issue is moot.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2015